# CASES

# SUPREME JUDICIAL COURT

---

## WILLIAM H. WINSLOW & al. vs. BENJAMIN F. COPELAND & al.

Where the condition of a bond provides, that the obligors shall sell and convey a tract of land to the obligees by good and sufficient deeds of warranty within four months from a day fixed, provided the obligees pay or cause to be paid their indorsed notes and drafts, dated on the same day, and payable to their own order in four months from date, according to their tenor; and provided also, that within said term of four months, they pay, or secure to be paid, a further sum in four equal annual payments; payment, or unconditional tender of payment, of the notes and drafts, is a condition precedent to the right of the obligees to maintain an action on the bond.

If the terms of a contract require, that payment for land to be conveyed shall be made, " by good notes, secured by mortgage on the premises," the notes must be good without the mortgage, and the mortgage is to be additional security.

DEBT on a bond, dated *July* 21, 1835. The condition of the bond was, " that whereas for a valuable consideration, we have agreed with and promised the said obligees, to sell and convey to them by good and sufficient deeds of warranty, within four months from *July* 17, 1835, township No. one," called the *Fowler* and *Ely* township, and described in the bond, " provided they pay or cause to be paid their drafts and notes, dated *July* 17, 1835, payable to their own order with interest in four months from date, as follows, viz. one draft each by said *Winslow* and *Bugbee*, for the

sum of $3795, and one note each, by said *Cahoon, Cutter, Tinkham* and *Gardner*, for the sum of $1897,50, according to their tenor; and provided also, that within said term of four months, they pay or secure to be paid the further sum of $68,310, as follows, viz. : by good notes secured by mortgage on the premises for the above mentioned sum payable in four equal annual payments, in one, two, three and four years from *July* 17, 1835, with interest annually. We being hereby bound to convey to said obligees according to their interest in said premises, viz. one quarter each to said *W. & B.*, and one eighth each to said *C., C., T., & G.*, and to take separate notes secured by mortgage as aforesaid ; and it being further understood and agreed, that we are hereby bound to convey our several proportions in said township, according as we now hold the same. Now therefore if on performance of said conditions, we shall well and truly keep and perform our said agreement, then, &c." The pleadings appear in the opinion of the Court. The parties met at *Augusta* on the seventeenth day of *November*, 1835, and the transactions there are sufficiently given in the opinion. *Gardner*, one of the plaintiffs, did not sign any of the notes offered under the second proviso, and those offered, were payable in *Portland*. The first set of drafts and notes mentioned in the condition of the bond had not all been paid when the trial of this action took place, nor had any tender of payment of them been made at the place where they were payable. Several objections were made to the title of the defendants, which need not be stated, as the new trial was granted by reason of failure of performance on the part of the plaintiffs. The report of the case, extending to eighty-five pages, shows, that eighteen instructions to the jury were requested by the counsel for the defendants, at the trial before EMERY J., and also the instructions actually given by the Judge. The first requested instruction was, " that it was the duty of the plaintiffs to pay or tender payment of all their notes and drafts mentioned in the first proviso of the bond, according to their tenor, before they were entitled to offer notes and mortgages as mentioned in the second proviso, or to call on the defendants for a deed, or question defendants' title, or sustain this action." The second was, " that the payment of said notes and drafts according to their tenor was a condition precedent to the plaintiffs' right to purchase or have the

land upon the terms and conditions mentioned in the second proviso." The tenth was, " that it was incumbent on the plaintiffs to offer good notes and the mortgages of each, and all the obligees in the bond according to the proportions in which the land was stipulated to be conveyed to them." The thirteenth was, " that by good notes, as mentioned in the bond, is meant notes signed by one or more persons possessed at the time of giving them of sufficient property to pay the amount promised, with such habits of business, as that prudent men would feel safe in taking, payable in four equal annual payments ; or notes signed by responsible men, such as a prudent man might reasonably rely upon for payment at maturity." And the fifteenth was, " that by the term good notes secured by mortgage on the premises, is meant such notes as would be considered good in the ordinary business sense of the term, as applicable to property of that description, and that the defendants were entitled to a mortgage on the premises as additional security, and that such notes as would not be good separate from the security afforded by the mortgage would not answer the meaning and intent of the parties." The Judge declined giving the instructions requested, and for the purposes of this trial, did instruct them, among other things, that the defendants had a right to expect from the plaintiffs the money stipulated, and good notes and mortgages of the premises upon giving to the plaintiffs a clear and unincumbered title to the land ; that the engagements were for concurrent acts to be performed by the parties ; the plaintiffs were not bound to part with their money without a clear title, nor the defendants to give such title without the money, notes and mortgages. That it was only necessary for the plaintiffs, so far as the performance of conditions in the first proviso of the bond is concerned, to have the money to pay said notes and drafts, when and where the deed was to be given, ready to be paid upon condition, that the defendants should give such a deed as they were entitled to receive. That it was incumbent on the defendants to give the plaintiffs a clear and unincumbered title to the land. That the plaintiffs had no right to make the notes payable in *Portland,* without the consent of the defendants, but that the jury would judge from the evidence, whether the defendants had not waived that objection, either expressly or impliedly. That the plaintiffs were bound to offer good

notes and mortgages upon receiving a deed with an unincumbered title to the land; and upon the whole evidence submitted to them, they would judge whether the notes offered by the plaintiffs were good notes within the terms of the bond; that it was not necessary they should be bankable paper; that the character, habits, credit, intelligence, activity and integrity of the signers were to be taken into consideration, and their value in connection with the property mortgaged; that it was not necessary, that they should be good separate from the mortgages, and they would inquire whether those notes made in the form they are, and payable as they are, were good notes within the meaning of good notes, as understood by the parties.

The verdict of the jury was for the plaintiffs, and was to be set aside, if the instructions requested ought to have been given, or those given were erroneous, or if the verdict is against law, or is not warranted by the evidence in the case.

There was also a motion made by the defendants to set aside the verdict, as against law and evidence.

The case was argued on *April* 10, 11, and 13, 1838; but many of the points argued are not considered in the opinion of the Court, and therefore are not given.

*W. P. Fessenden,* for the defendants.

Before the plaintiffs could demand a deed, they must absolutely pay or make an unconditional tender of payment, of the notes and drafts for the first payment mentioned in the bond. These were made negotiable and payable at either of the banks in *Portland.* The language of the bond is, that they are to be paid according to their tenor. These notes and drafts were to be *first paid;* this condition was to be first *absolutely performed,* and was independent of the defendants' covenants. That some of the covenants, or agreements, in a contract may be dependent, and others independent, is fully and finally settled, in *Kane* v. *Hood,* 13 *Pick.* 281. Admitting, therefore, that the covenants of the defendants and the giving notes secured by the mortgage might be dependent, still the payment of the first notes and drafts was a perfectly *independent condition.* He cited as authorities on this point, 1 *Saund.* 320; 12 *Mod.* 445; 1 *Salk.* 171; 8 *T. R.* 366; *Johnson* v. *Reed,*

9 *Mass. R.* 81 ; 4 *T. R.* 761 ; *Gardiner* v. *Corson*, 15 *Mass. R.* 500 ; 2 *New Rep.* 232 ; *Willes*, 157 ; 3 *Merivale*, 52.

The plaintiffs show neither a performance nor a readiness to perform ; and one of these is necessary. 5 *Johns. R.* 179 ; 2 *Johns. R.* 207 ; *Brown* v. *Bellows*, 4 *Pick.* 179. By the terms of the bond, " *good notes*, secured by mortgage on the premises" were to be given. By this is meant such notes as would be *good*, if not secured by mortgage ; that the mortgage was to be *additional security*. If this be not the true construction, the word *good* is without meaning.

*Deblois* for the plaintiffs.

The covenants in the condition of the bond were mutual and dependent, and it was not necessary for the plaintiffs to part with their money, and to perform the other parts of their engagement, inasmuch as the defendants were unable to perform their part of the obligations. By a proper construction of the contract, the acts of the parties were to be simultaneous. *Kane* v. *Hood*, 13 *Pick.* 281, cited on the other side ; also *Johnson* v. *Reed*, 9 *Mass. R.* 78 ; *Gardiner* v. *Corson*, 15 *Mass. R.* 500 ; *Porter* v. *Noyes*, 2 *Greenl.* 22 ; 10 *Johns. R.* 265 ; 4 *T. R.* 761 ; 8 *T. R.* 366 ; *Hunt* v. *Livermore*, 5 *Pick.* 395 ; 17 *Johns. R.* 293 ; *Couch* v. *Ingersoll*, 2 *Pick.* 301 ; *Dana* v. *King*, *ib.* 155 ; 2 *Burr.* 899 ; 1 *H. Black.* 270 ; 1 *Salk.* 112 ; 2 *Doug.* 684 ; *Howland* v. *Leach*, 11 *Pick.* 151 ; 11 *Johns. R.* 525 ; 7 *T. R.* 129 ; 2 *Johns. R.* 207 ; 16 *Johns. R.* 267 ; 20 *Johns. R.* 130 ; *ib.* 24 ; 5 *Johns. R.* 181 ; 2 *Esp. R.* 639. The plaintiffs were not bound to make an unconditional tender, unless the other party was willing to perform. *Newcomb* v. *Brackett*, 16 *Mass. R.* 161. Where one has disabled himself from performing his part of the contract, the law does not require tender or payment by the other. *Brown* v. *Bellows*, 4 *Pick.* 179 ; 1 *East*, 203.

All that the bond required was that the notes should be good notes. It is immaterial who gave them, if they were good. Whether they were or were not good notes, was a question exclusively for the jury, and they have found them to be good. Any other fact in the case could be taken from the jury with equal propriety.

*S. Fessenden* also argued for the plaintiffs, and *Preble* replied for the defendants.

The case was continued for advisement, and at a subsequent term the opinion of the Court was drawn up by

EMERY J. — Notwithstanding the wide range of able argument which this case has elicited on the subject of the eighteen requested instructions, we conceive that the cause is ultimately to be settled on the decision of but few of the questions which have been so elaborately argued.

The action is debt on bond. The plea is that it is not the deed of the defendants ; and in a brief statement they set forth the deed and say, that they have been always ready to perform all things on their part to be done and performed according to the true intent and meaning of said writing obligatory, whenever the said plaintiffs, on their part, should entitle themselves to a performance thereof, and that the plaintiffs have not performed the conditions and duties on their part first to be performed. In reply, this is denied by the plaintiffs, and they say, that although the plaintiffs were ready to perform all the conditions and stipulations named in said bond to be by them performed and tendered performance of the same according to the true intent and meaning of said bond ; yet the defendants were unable to sell and convey to the plaintiffs the land named and described in said bond by good and sufficient deed of warranty, by reason whereof the defendants broke their covenants and agreements to and with the plaintiffs as set forth in said bond. And particularly that said land was incumbered by a mortgage from the said defendants to one *Benjamin F. Copeland,* dated *January* 7th, 1834, to secure the payment of four notes of $3127,50, and also to fulfill the conditions of a bond from said *Copeland* to one *Samuel F. Lyman.* Also that the township was originally granted by the Commonwealth of *Massachusetts* to *Justin Ely* on condition that said *Ely* should settle on said township twenty families in four years and twenty families in eight years, which condition was never performed by the grantee, or any person claiming under him, whereby said township was forfeited and liable to be re-seized for non-fulfillment of said condition. That said land was also incumbered by a mortgage from *Neal D. Shaw, Benjamin F. Copeland,* and *John*

*Lemist,* to *Samuel F. Lyman,* conditioned to pay to said *Lyman* $10,000 in five annual instalments, with interest annually on the whole, from *December* 6, 1832, the date of said deed.

The jury have said, that the defendants did waive the strict performance by the plaintiffs, of all the conditions on the part of the plaintiffs; that the notes offered by the plaintiffs were good notes within the terms of the bond; and that the notes made in the form they are and payable as they are, were good notes, within the meaning of good notes as understood by the parties. And as to the question, was the fact of the settling duties not having been released or commuted, known to the defendants and concealed by them from the plaintiffs at the time of executing the bond, the answer of the jury was, "we have no testimony to govern us in a decision on that point." And they say, that the other incumbrances were known to the plaintiffs at the execution of the bond. And the jury think that the defendants did waive objections to the notes on account of the place where made payable.

From the report of the trial, we learn, that if in the opinion of the whole Court any of the instructions given, were erroneous in matter of law, or if under the circumstances and facts proved in this case, instructions ought to have been given to the jury which the Judge declined to give, or the verdict is against law, or is not warranted by the evidence in the case, the verdict is to be set aside.

Now the evidence is clear, that on the interview at *Augusta,* it was stated by the defendants through their counsel to the plaintiffs that the notes and drafts were in *Portland,* where the same were payable, but if the plaintiffs wished to pay them the defendants could take the money, otherwise the plaintiffs must pay them where they were payable. On being asked, if the plaintiffs meant to make an unconditional tender, the answer was no, and that they should not pay the notes and drafts at that time unless they could have an unincumbered title. They were admonished too that if the plaintiffs wanted a lawsuit they must do all on their part to place themselves in a situation to maintain it. It was also stated to the plaintiffs just before they left the room, or as they were leaving it, that the defendants wished the plaintiffs distinctly to understand, that the defendants did not consider the plaintiffs saying they had the

money, as a tender, or what had been done as a compliance with the condition of the bond, and that the defendants would hold them to strict performance of all things on their part.  We think the evidence did not warrant the finding a waiver of this portion of the condition as to the payment of the money, unless we attribute to language, a meaning directly opposite to the sense in which we have always been accustomed, and in this case feel bound, to understand it.

To ascertain the meaning of the contract we must look to its terms and the situation of the parties, and the subject matter of the contract.  The whole concern was a speculation, and preliminary to the right of the plaintiffs to claim an unincumbered title, they were absolutely to pay their money for their notes and drafts already given and negotiated.

The report also communicates that divers witnesses were examined on both sides, as to the goodness of the notes offered, who differed in their opinions as to the goodness of the notes when secured by the mortgage, but all of them agreed that the notes of *Winslow, Bugbee, Cutter* and *Tinkham* would not be good, for their several amounts, without additional security, either of the land itself, or of some other security.

The instruction to the jury, that the value of the notes in connection with the property mortgaged, was to be taken into consideration, and that it was not necessary they should be good separate from the mortgage ; the Court consider erroneous in matter of law.  The finding of the jury must necessarily have been influenced by that instruction.  The good notes should be such independently of the mortgage.  And as the finding of the jury, that they were good must be taken to be in conformity with the direction of the Court, in this particular, that finding is ineffectual.

The defendants were seized in fee of the township.  It was under incumbrances all of which were known to both parties, excepting the provision as to settling duties, which it would seem, was at the time of the contract, unknown to them all.  It does not appear that there was any absolute contract made by the plaintiffs to take and pay for the land.  They might pay the sums, for which they had given their notes or drafts, omit to proceed further, and the defendants must bear their disappointment without complaint, and

without remedy.    It is true that in the deed of assignment to *William Cutter*, by *John D. Gardner*, dated the 2d of *Nov.* 1835, of his interest in the *Fowler* and *Ely* township, authorizing *Cutter* to settle for the same and to take a deed in his own name, he giving security therefor in *Gardner's* stead, agreeably (as *Gardner* says) to a bond signed by *Gardner* and others on the seventeenth day of *July* then last, it might be implied, possibly, that some direct engagement had been made to take the land.    Yet no such bond, signed by *Gardner* and others, was exhibited in evidence, nor any notice given to produce it, if any such were given.    It is possible that he alluded to the bond now in suit.    But whether he did or not, our construction is, that the payment of the notes or drafts was a prerequisite on the part of the plaintiffs, in order to sustain an action upon the bond.    *Campbell* v. *French*, 6 *Term Rep.* 200. The plaintiffs treat the matter as a subsisting contract.    The defendants are free from any imputation of deception, concealment or fraud.    They have extinguished the mortgages.    The settling duties are commuted.

The verdict must be set aside.    A new trial however must be utterly unavailing to the plaintiffs.